NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| NEW ENGLAND PETROLEUM LIMITED PARTNERSHIP, | Civil Action No.: 14-cv-726 |
|---|---|
| Plaintiff, | OPINION |
| v. | |
| DAIBES OIL LLC, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court by way of two motions: (1) Defendants David L. Spector, CPA, P.C. and David L. Spector's (collectively, the "Spector Defendants") motion for summary judgment as to counts nine and ten of Plaintiff New England Petroleum Limited Partnership's ("Plaintiff") second amended complaint, (ECF No. 110); and (2) Plaintiff's motion for summary judgment as to counts one through five and count eight of Plaintiff's second amended complaint as against Defendants Daibes Oil LLC ("Daibes"), Munir J. Daibes ("Munir"), and Fred A. Daibes ("Fred," and collectively with Daibes and Munir, the "Daibes Defendants"). (ECF No. 111). After reviewing the submissions made in support of and in opposition to the instant motions, as well as the arguments made on the record during oral argument on June 15, 2017, (ECF No. 148 ("Tr.")), and for the reasons set forth below,[1] the Spector Defendants' motion is denied and Plaintiff's motion is granted in part and denied in part.

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

1

## II. BACKGROUND

"In or about September of 2007, Daibes . . . and [Plaintiff] began a business relationship pursuant to which Daibes . . . would purchase petroleum products . . . from [Plaintiff]."[2] (ECF No. 111-2 ¶ 1). "In connection with the request to do business, and in the account application submitted by Daibes . . . to [Plaintiff], both Munir and Fred were listed as members of Daibes[.]"[3] (*Id.*). Daibes "purchased [p]etroleum [p]roducts from [Plaintiff] by authorizing Daibes['s] . . . customers to lift [p]etroleum [p]roducts from [Plaintiff's p]etroleum [p]roducts inventory at oil terminals." (*Id.* ¶ 2). Plaintiff "would invoice Daibes . . . for those liftings and Daibes . . . would pay [Plaintiff] for those invoices through electronic fund transfers . . . generated by [Plaintiff], which 'drafted' (deducted) the amount owed from Daibes['s] . . . bank accounts approximately ten (10) days later."[4] (*Id.*).

"In 2008, as a condition of continuing to do business with Daibes . . . [Plaintiff] required Daibes . . . to submit an account application and current financial statements."[5] (*Id.* ¶ 3). Moreover, on August 5, 2008, Daibes executed an agreement entitled "Account General Terms & Conditions," which sets forth the provisions governing Daibes's purchases of petroleum products

---

[2] Unless otherwise indicated, the following factual background is not disputed by the parties.
[3] Although Daibes indicates it "disputes the purported facts contained in this paragraph with the exception of Daibes . . . commencing a business relationship with [Plaintiff] in or about September of 2007," (ECF No. 122 ¶ 1), Daibes neither states its disagreement with this statement nor cites to "the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1. Accordingly, because this statement is "not disputed[, it] shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Moreover, Fred maintains that "he was not aware of any documents sent from Daibes . . . to [Plaintiff] at any point in time[.]" (ECF No. 121-26 ¶ 1).
[4] Daibes admits this statement "with the exception that invoices must be agreed upon and accepted by Daibes . . . as to price and terms as a matter of law." (ECF No. 122 ¶ 2). Because statements of material facts "shall not contain legal argument or conclusions of law," L. Civ. R. 56.1, this statement is deemed undisputed.
[5] Although Daibes contends that Plaintiff "continued to do business with Daibes . . . into 2008 and beyond despite the representation of Alice Kuhne that a condition existed to do business with Daibes," (*id.* ¶ 3), Daibes does not appear to dispute this statement.

2

from Plaintiff. (*Id.* ¶ 3; ECF Nos. 122 ¶ 3, 111-9 at 5). With regard to payment, the agreement states that:

> [Daibes] agrees to pay all amounts due, without offset or deduction, via means acceptable to [Plaintiff] and within the terms of payment specified by [Plaintiff]. Notice of pricing dispute must be received by [Plaintiff] within seven (7) working days of the date of our invoice. The payment due date and terms of any cash discount will be printed on [Plaintiff's] invoice. [Daibes] agrees to not take any such discount unless in compliance with discount terms and to not deduct any greater amount than that allowed. [Daibes] agrees to pay a service charge of the lesser of 1.5% per month or the maximum amount allowable under state law on any outstanding past due balance and to pay all attorneys' fees, experts' fees, costs and expenses incurred by [Plaintiff] in the enforcement of [Daibes's] obligations or collection of the account and amounts due thereunder.

(ECF No. 111-9 at 5). The parties do not dispute the existence of this agreement, (ECF Nos. 111-2 ¶ 3, 122 ¶ 3), although Daibes maintains that "payment of invoices . . . must be accepted and agreed upon and accepted by Daibes . . . as to price and terms as a matter of law,"[6] (ECF No. 122 ¶ 4), and Fred avers that he "had never seen the Account General Terms and Conditions prior to his deposition." (ECF No. 121-26 ¶ 3).

"At the commencement of the parties' relationship, and over the years they did business together, [Plaintiff] requested and received financial statements from Daibes . . . that were prepared by and attested to by defendant David L. Spector, CPA of David L. Spector, CPA, P.C." (ECF No. 111-2 ¶ 6; *see also* ECF No. 110-4 ¶ 11 (noting that the Spector Defendants prepared financial statements for Daibes)). "These financial statements included statements of Daibes['s] . . . assets and liabilities, income, expenses, and cash flow." (ECF No. 111-2 ¶ 6).

"Over the years, Daibes['s] . . . purchases of [p]etroleum [p]roducts from [Plaintiff] increased substantially." (*Id.* ¶ 7; ECF No. 121-26 ¶ 7). Moreover, "[o]n or about August 13, 2009 . . . [Plaintiff] received in the mail . . . credit authorizations from Fred and Munir . . . as well

---

[6] Because statements of material facts "shall not contain legal argument or conclusions of law," L. Civ. R. 56.1, this statement is deemed undisputed.

as executed, witnessed, and notarized guarantees from Fred . . . and Munir[.]" (ECF No. 111-2 ¶ 8). Although Daibes contends it "disputes the purported facts contained in this paragraph," (ECF No. 122 ¶ 8), Daibes does not cite to "the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1. Accordingly, because this statement is "not disputed[, it] shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Fred contends, however, citing to documents submitted in connection with the motion, that "the document purporting to be Fred's guaranty was not executed by Fred." (ECF No. 121-26 ¶ 8).

The guaranties state, in relevant part, that Fred and Munir:

> [H]ereby jointly and severally guarantee(s) the payment of any and all amounts due for petroleum products heretofore and/or hereafter sold and delivered by [Plaintiff] . . . to [Daibes] . . . as well as the payment or discharge of any and all other indebtedness or obligations whether now or at any time hereafter owing or unpaid from the above named [Daibes] to [Plaintiff] . . . . This Guaranty shall continue in full force and effect until revoked by the undersigned by giving fifteen (15) days prior notice of revocation in writing by registered or certified mail to [Plaintiff.]

(ECF No. 111-9 at 11, 14). "On or about November 7, 2013, [Plaintiff] received from Daibes . . . personal financial statements for Munir and Fred for the period ending December 21, 2012, which were prepared and attested to by the Spector Defendants." (ECF Nos. 111-2 ¶ 12, 121-26 ¶ 12, 122 ¶ 12). Over the Daibes Defendants' objections, Plaintiff maintains that Plaintiff "relied on the personal financial statements, and agreed to permit Daibes . . . to increase the amount of [p]etroleum [p]roducts lifted." (ECF No. 111-2 ¶ 13).

"From January 3 to January 15, 2014, Daibes . . . lifted [p]etroleum [p]roducts from [Plaintiff] more than 400 times." (*Id.* ¶ 16). "As of January 15, 2014, the outstanding unpaid amount of [p]etroleum [p]roducts exceeded $5 million."[7] (*Id.*). "On or about January 15, 2014,

---

[7] Daibes admits the contents of this statement "with the exception of the amount of the outstanding balance which has not been reasonably and/or precisely determined or calculated by [Plaintiff] as a matter of law[.]" (ECF No. 122 ¶ 16). Although statements of material facts "shall not contain

4

after a substantial amount of [p]etroleum [p]roducts was lifted, an [electronic fund transfer] draft was not honored due to insufficient funds in Daibes['s] . . . bank account." (*Id.*). "The next day, upon learning of the non-honored draft, [Plaintiff] refused to permit Daibes . . . any further access to lift [p]etroleum [p]roducts."[8] (*Id.*).

Daibes and Munir do not appear to dispute that Plaintiff tendered invoices to Daibes for payment, that Daibes was required to pay Plaintiff for any petroleum products lifted, and that Daibes and Munir have not paid Plaintiff. (ECF No. 122 ¶¶ 45-48 (admitting these allegations with the exception that Plaintiff argues that the amounts of monies owed have not been sufficiently established)). Conversely, Fred maintains that he is "without knowledge" as to whether these facts are true because Fred was not involved in the day to day work at Daibes, has no knowledge of any documents, including financial statements, sent from Daibes to Plaintiff at any point in time, has never seen the Account General Terms and Conditions agreement governing Plaintiff's invoices, and did not execute a guaranty as to Daibes. (ECF No. 121-26 ¶¶ 1, 3, 6, 8, 10, 35, 45-48).

On June 11, 2015, Plaintiff filed its second amended complaint in this Court. (ECF No. 83). On October 14, 2016, the Spector Defendants and Plaintiff filed separate motions for summary judgment. (ECF Nos. 110, 111). Plaintiff and Defendants subsequently filed a number of additional submissions, which have been duly considered by the Court.

## III. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other

---

legal argument or conclusions of law," L. Civ. R. 56.1, Daibes's argument will be addressed in further detail, *infra*.

[8] Daibes admits the contents of this statement "with the exception [that] . . . [Plaintiff] did not independently refuse to permit Daibes . . . to access [p]etroleum [p]roducts at that time." (*Id.*).

5

materials," Fed. R. Civ. P. 56(c), demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must exceed "the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV. DISCUSSION

### A. The Spector Defendants' Motion for Summary Judgment

Currently before the Court is the Spector Defendants' motion for summary judgment as to count nine (fraudulent misrepresentation) and count ten (aiding and abetting fraudulent misrepresentation) of Plaintiff's second amended complaint. (ECF No. 110). In support of the Spector Defendants' motion, they argue that: (1) the evidence put forth by Plaintiff is insufficient to establish a cause of action under New Jersey law; and (2) based upon evidence adduced during discovery, the Spector Defendants are entitled to summary judgment. (*Id.*). Each of the Spector Defendants' arguments will be addressed in turn.

#### 1. Reasonable Reliance

The Spector Defendants argue that the evidence put forth by Plaintiff is insufficient to establish a cause of action under New Jersey law. (*Id.* at 1). More specifically, the Spector Defendants contend that Plaintiff is unable to establish the "reasonable reliance" element of a common law fraud claim.

"The elements of common law fraud are: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Electromagnetic Techs. Indus., Inc. v. CCOM*, No. 13-3981, 2015 WL 3879691, at *1 (D.N.J. June 22, 2015) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).[9] The Spector Defendants argue that Plaintiff is unable to establish the "reasonable reliance" element

---

[9] Although the parties disagree as to whether New Jersey law or Massachusetts law applies in this matter, the parties "agree that Massachusetts and New Jersey law are the same in the relevant areas" of their motions for summary judgment. (Tr. at 4:23-5:8). Accordingly, the Court will cite to both New Jersey and Massachusetts law in this Opinion.

7

of a common law fraud claim because Gary Kaneb, the President of Plaintiff:

> [T]estified unequivocally that in extending credit to Defendant Daibes . . . he relied exclusively on what he understood to be the net worth of Defendants [Fred] and [Munir] . . . additionally the expert retained by Plaintiff in order to prove its fraud allegations against the Spector Defendants, has refused to opine that a fraud was, in fact, committed . . . . [T]he uncontroverted evidence discerned through discovery reveals that [Plaintiff] did not rely upon those financial statements in any manner whatsoever, when it extended credit and/or increased credit to [Plaintiff]. Plaintiff made it's [sic] decisions based solely upon the net worth of [Fred] and his alleged personal guarantees.

(ECF No. 110-1 at 1-2). Accordingly, the Spector Defendants maintain that no genuine issue of material fact exists with respect to the "reasonable reliance" element of a common law fraud claim and therefore, the Spector Defendants are entitled to summary judgment.

The Court disagrees. In opposition to the Spector Defendants' contention, Plaintiff identifies three pieces of evidence in support of its argument that Plaintiff reasonably relied on the financial statements prepared by the Spector Defendants in deciding whether to authorize an increase in Daibes's credit line. First, Plaintiff points to Plaintiff's "Credit Review Form," which purportedly "shows that [Plaintiff] maintained a record of the information obtained from the Financial Statements prepared by the Spector Defendants and reviewed the information, which was required to satisfy [Plaintiff] that Daibes . . . had the financial ability to repay its debts." (ECF No. 118 at 12; *see also* ECF No. 111-8 at 156-63).

Second, Plaintiff relies on the deposition testimony of Alice Kuhne, Treasurer of Continental Management Corporation, General Partner of Plaintiff, which states in relevant part:

Q. What is the decision [to provide credit] based upon?

A. The application, knowledge of the company, the financial statements provided for the company, references provided.

. . . .

Q. And why was a decision made to sell to [Daibes] during that period 2007, 2009, even though they had yet to provide a personal guarantee?

8

> A. We had financial statements for the company prepared by a professional accountant that we relied upon.
>
> . . . .
>
> Q. How is the credit line set by New England Petroleum?
>
> A. It's based on financial statements or tax returns, references, whether or not we have a personal guarantee, a letter of credit, a cash deposit, knowledge of the company, history of the company, et cetera.

(ECF Nos. 110-11 at 14, 22; 110-12 at 19-20).

Third, Plaintiff highlights the deposition testimony of Ms. McSweeney, Plaintiff's Credit Manager, which states in relevant part:

> Q. On a credit application, what items would be of concern to you that would make you request a personal guarantee?
>
> A. Not the credit application. It's the financial statements.
>
> . . . .
>
> Q. During your review of the financial statements, what concerns would the financial statements raise which would lead you to request a personal guarantee?
>
> . . . .
>
> A. . . . . Low equity.

(ECF No. 111-8 at 15).

Based on the foregoing, the Court cannot find that there is no genuine issue of material fact as to Plaintiff's reliance. Even assuming the Spector Defendants are correct in asserting that *Mr. Kaneb* testified that he did not rely on Daibes's financial statements in deciding whether to extend Daibes's credit line, Plaintiff sets forth sufficient evidence that *Plaintiff*, through individuals such as Ms. Kuhne and Ms. McSweeney, did in fact rely on such statements. Accordingly, the Spector Defendants' argument is without merit.

The Spector Defendants further argue that, even if Plaintiff was able to establish the reliance element of a common law fraud claim, Plaintiff's reliance was unjustifiable because

9

"Plaintiff failed to conduct even a cursory investigation as to the financial stability of" Daibes. (ECF No. 110-1 at 3). Based on the foregoing, the Court finds that at a minimum, there is a genuine issue of material fact as to whether Plaintiff's reliance was justifiable. *See supra* (discussing the documents and information considered by Plaintiff in deciding whether to issue credit to Daibes). As such, this argument is also without merit.

### 2. Mr. Love's Opinion and Testimony

The Spector Defendants next argue that based upon evidence adduced during discovery, the Spector Defendants are entitled to summary judgment. (ECF No. 112 at 4). More specifically, in addition to their reliance argument, the Spector Defendants contend that Plaintiff is unable to prove the elements of fraud by "clear and convincing evidence" because "Plaintiff is unable to rely upon Mr. Love's [(Plaintiff's expert witness)] opinion[.]" (*Id.* at 5-6).

As a preliminary matter, the Court notes that the Spector Defendants' contention assumes that a plaintiff cannot survive summary judgment on a fraud claim without reliance on an expert witness. Nonetheless, depending on "the facts of [a] case, expert testimony [may] not [be] necessary to establish a prima facie case . . . for fraud[.]" *Saurino v. Senatore*, No. A-5805-04T1, 2006 WL 2346300, at *2 (N.J. Super. Ct. App. Div. Aug. 15, 2006).

Even if expert testimony was necessary to establish a prima facie case for fraud, the Spector Defendants' contentions concerning Mr. Love are meritless. First, the Spector Defendants maintain that "Mr. Love refused to opine that the Spector Defendants had committed fraud." (ECF No. 110-1 at 5). Second, the Spector Defendants aver that "Mr. Love's opinion that there is 'indicia of fraud' may well be subject to exclusion [because s]ituations in which the failure to qualify the opinion have resulted in exclusion are usually those in which the expert testimony may be considered speculative, through use of words such as 'possibility.'" (*Id.* (citing cases)).

Nonetheless, Mr. Love's testimony states in relevant part:

Q. When you say "indicia of fraud," what do you mean?

A. The conditions that could lead to that fraud. Fraud includes an action and intent. "Intent" is a state of mind. I can talk about the indicia for it. I can't talk about a person's state of mind.

Q. So your testimony is that these indicia, these elements could show that the fraud existed but you don't know for certain?

A. No. Let me say, there's a very strong indicia here of fraud. Okay? Only a trier of fact is going to make a determination if there was fraud. Okay? That's the ultimate question on the fraud. Everything here, the books, the records, the interrelationship of transactions and business transactions, not being able to find documents to support things, they are all indicia of fraud.

(ECF No. 110-10 at 9). Accordingly, although the Spector Defendants contend that Mr. Love refused to opine that the Spector Defendants had committed fraud, Mr. Love's true contention was that whether the Spector Defendants are in fact guilty of fraud is a question for the jury. For the same reason, Mr. Love chose to opine on whether "indicia" of fraud existed in the present case, rather than conclude fraud occurred. The Court does not find that such qualifications make Mr. Love's opinion so speculative as to render it excludable. *Contra State v. Harvey*, 581 A.2d 483, 495 (N.J. 1990) (instructing the court that on remand, an expert's testimony that an injury possibly or possibly not consisted of two injuries would be inadmissible). As such, the Spector Defendants' arguments fail and their motion for summary judgment is denied.

### B. Plaintiff's Motion for Summary Judgment

Also currently before the Court is Plaintiff's motion for summary judgment as to counts one through five (breach of contract, book account, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and breach of guaranty) and count eight (estoppel) of Plaintiff's second amended complaint. (ECF No. 111). With respect to counts one through three, Plaintiff moves for summary judgment only as to Daibes. With respect to count four, Plaintiff

moves for summary judgment as to all of the Daibes Defendants. With respect to count five, Plaintiff moves for summary judgment only as to Munir and Fred, and with respect to count eight, Plaintiff moves for summary judgment only as to Fred. Each count will be addressed in turn.

### 1. Breach of Contract (Count One)

Plaintiff first argues that the Court should grant summary judgment as to count one because Daibes breached its agreement with Plaintiff. "To sustain a breach of contract claim, [a plaintiff] must establish: '(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [the plaintiff] performed its own contractual obligations.'" *Mehrnia v. New Century Bank*, No. 10-4159, 2012 WL 481282, at *3 (D.N.J. Feb. 10, 2012) (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).

Here, the undisputed evidence demonstrates that Daibes executed and delivered to Plaintiff an agreement entitled "Account General Terms & Conditions." (ECF Nos. 111-2 ¶ 3, 122 ¶ 3; *see also* ECF No. 111-9 at 5). Pursuant to this agreement, Daibes purchased petroleum products from Plaintiff, for which Plaintiff rendered invoices to Daibes. (ECF No. 111-9 at 5). The agreement required Daibes to pay all amounts due on the invoices in accordance with the terms set forth on such invoices. (*Id.*). Daibes was also required:

> [T]o pay a service charge of the lesser of 1.5% per month or the maximum amount allowable under state law on any outstanding past due balance and to pay all attorneys' fees, experts' fees, costs and expenses incurred by [Plaintiff] in the enforcement of [Daibes's] obligations or collection of the account and amounts due thereunder.

(*Id.*).

Daibes undisputedly agreed to the provisions required under the agreement, which was executed on August 5, 2008. (ECF Nos. 111-2 ¶¶ 3, 46; 122 ¶¶ 3, 46). Daibes has not paid the amounts due or the service charge required by the agreement. (ECF Nos. 111-2 ¶ 47, 122 ¶ 47). Therefore, Daibes is currently in default. There is no dispute that Plaintiff performed its own

12

contractual obligations under the agreement. (ECF Nos. 111-2 ¶ 45, 122 ¶ 45). Rather, Daibes contends that Plaintiff's failure "to provide adequate support for the specific amounts it is seeking from Daibes" renders summary judgment inappropriate. (ECF No. 120 at 9).

In support of its damages calculations, Plaintiff submitted a summary of invoices produced in discovery and two certifications under oath. The summary of invoices shows that between January 3, 2014 and January 15, 2014, Daibes incurred invoices totaling $5,619,400.84, which had not been paid to Plaintiff. (ECF No. 111-12 at 70-78; *see also* ECF No. 111-10 at 2-13 (same)). As to Plaintiff's submitted certifications, Ms. Kuhne's first certification states, in relevant part:

> As of January 15, 2014, the outstanding unpaid amount of [p]etroleum [p]roducts exceeded $5 million. In total, the sum of $5,619,400.84 is due and owing from Daibes . . . to [Plaintiff] for the [p]etroleum [p]roducts purchased by Daibes . . . during the twelve (12) day period they lifted the products.

(ECF No. 111-3 ¶¶ 13-14; *see also* ECF No. 126-3 ¶ 8 (stating in Ms. Kuhne's second certification that "the sum of $5,619,400.84 is due and owing from Daibes . . . to [Plaintiff] for [p]etroleum [p]roducts purchased by Daibes . . . for which they have not paid.")).

With respect to the service charge, Plaintiff provided a certification under oath, stating that:

> As to the service charges owed, the Agreement clearly provides: "Customer agrees to pay a service charge of the lesser of 1.5% per month or the maximum amount allowable under state law on any outstanding past due balance . . . ." That amount equates to 18% per annum. Attached hereto as Exhibit A is a true copy of the calculations compiled as to the amount due for service charges. The amount due for contractually mandated service charges through November 21, 2016 (the adjourned return date of this motion) is $2,869,306.99.

(ECF No. 126-3 ¶¶ 11-12; *see also id.* at 5-15 (presenting in a spreadsheet the service charges for the period between January 3, 2014 and January 15, 2014)).[10]

---

[10] The Court notes that Plaintiff "only ran interest through the initial return date of the motion which was November of 2016." (Tr. at 25:14-15). The Court further notes that Plaintiff testified that it will submit a separate affidavit as to attorneys' fees and expert fees. (Tr. 25:17-19). Plaintiff is directed to include in such affidavit interest calculations for the period after November 2016.

13

Despite the evidence presented by Plaintiff, Daibes argues that "the lack of [Plaintiff's] ability to identify any portions of the pleadings, depositions, answers to interrogatories, and/or admissions on file regarding the specific damage amounts required by [Plaintiff]," means that "[Plaintiff] has failed to demonstrate the absence of a genuine issue of material fact as it relates to [Plaintiff's] breach of the Agreement claim." (ECF No. 120 at 10). The Court disagrees. The evidence provided by Plaintiff satisfies Plaintiff's initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

Therefore, the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact existed for trial, shifted to Daibes. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Daibes therefore must have "go[ne] beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate[d] 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Big Apple BMW, Inc.*, 974 F.2d at 1363. Because Daibes has failed to identify *any* evidence contradicting Plaintiff's damages calculations, Daibes's argument is without merit. Accordingly, Plaintiff's motion for summary judgment with respect to count one as against Daibes is granted.

> 2. **Book Account (Count Two), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Three), and Unjust Enrichment (Count Four)**

Plaintiff next argues that the Court should grant summary judgment as to count two because Daibes is liable to Plaintiff under a book account, as to count three because Daibes breached the covenant of good faith and fair dealing, and as to count four because the Daibes Defendants have been unjustly enriched. During oral argument, however, Plaintiff clarified that counts two through four were pled as alternative theories of liability, and need not be adjudicated if summary judgment was granted on count one. (Tr. at 24:11-25:12, 39:10-11). Accordingly, Plaintiff's motion for summary judgment with respect to count two as to Daibes, with respect to count three as to Daibes,

14

and with respect to count four as to the Daibes Defendants is denied as moot.

### 3. Breach of Guaranty (Count Five)

Plaintiff further contends that the Court should grant summary judgment as to count five because Munir and Fred breached their respective guaranties.

> To be entitled to a judgment on a guaranty, a plaintiff must demonstrate: 1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee); 2) the principal obligation and terms of the guaranty; 3) the lender's reliance on the guaranty in extending monies to the borrower; 4) default by the principal obligator; 5) written demand for payment on the guarantee; [and] 6) failure of the guarantor to pay upon written demand.

*U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727-28 (D.N.J. 1993). Because Munir and Fred's guaranties require different analyses, each will be addressed in turn.

#### a. Munir

With respect to Munir, there is no dispute that Munir voluntarily and knowingly executed the guaranty. (ECF No. 122 ¶ 8 ("Admit . . . to [Plaintiff] receiving a personal guaranty from Munir Daibes[.]")). Further, despite Munir's arguments to the contrary, the terms of the guaranty itself are unambiguous. The guaranty states, in pertinent part, that Munir:

> [H]ereby jointly and severally guarantee(s) the payment of any and all amounts due for petroleum products heretofore and/or hereafter sold and delivered by [Plaintiff] . . . to [Daibes] . . . as well as the payment or discharge of any and all other indebtedness or obligations whether now or at any time hereafter owing or unpaid from the above named [Daibes] to [Plaintiff] . . . . This Guaranty shall continue in full force and effect until revoked by the undersigned by giving fifteen (15) days prior notice of revocation in writing by registered or certified mail to [Plaintiff.]

(ECF No. 111-9 at 11). Although Munir purports to dispute that Plaintiff relied on Munir's guaranty in extending monies to Daibes, (ECF No. 122 ¶ 7), Munir cites to no "affidavits [or] other documents submitted in connection with the motion" in support of such opposition. L. Civ. R. 56.1. Rather, Munir merely cites to two deposition transcripts discussing what Daibes's credit line

15

was at certain periods of time. (ECF Nos. 121-7 at 4-5, 121-8 at 3). Accordingly, Munir has not met his burden that a genuine issue of material fact exists for trial.

Additionally, Munir concedes that he has defaulted. (ECF No. 122 ¶¶ 46, 48). Finally, on January 24, 2014, Plaintiff made a written demand for payment on the guaranty, (ECF No. 111-10 at 2-3), which Munir has not paid. (ECF No. 122 ¶ 48). Accordingly, because all of the elements necessary to establish a prima facie case of breach of guaranty have been satisfied, and no genuine issue of material fact exists as to these elements, Plaintiff's motion for summary judgment with respect to count five as to Munir is granted.

### b. Fred

Unlike Munir, Fred does not concede that the first element of a breach of guaranty claim, execution of the guaranty by the guarantor, has been met. (ECF No. 121-26 ¶ 8). Rather, Fred maintains that "the document purporting to be Fred's guaranty was not executed by Fred." (*Id.*). Despite Fred's contention, Plaintiff argues that Fred is nonetheless liable because Fred's notarized, witnessed guaranty is presumed valid. (ECF No. 111-1 at 20).

"A certificate of acknowledgment made by a duly authorized officer is regarded as prima facie evidence that the person therein named executed the instrument to which it is attached as his voluntary act and deed." *Dencer v. Erb*, 60 A.2d 282, 285 (N.J. Ch. 1948). "The statements contained in the acknowledgment may be shown to be untrue." *Id.* "But to establish its falsity and overcome the strong presumption of its integrity the proof must be clear, satisfactory, and convincing." *Id.*

Plaintiff contends that Fred has not overcome this presumption for two reasons. First, Plaintiff argues that Fred's self-serving testimony carries little weight with respect to overcoming the presumption of validity. (ECF No. 111-1 at 21). Second, Plaintiff avers that Fred's

16

handwriting expert "refused to offer an opinion to a reasonable degree of certainty or even a probability as to whether Fred was incapable of being the signatory to the Fred Guaranty. Nor could [Plaintiff's expert] eliminate Fred as the signer of the document." (*Id.* at 21-22). Accordingly, Plaintiff maintains that Fred's expert's "testimony is of such a vague and indeterminate nature that it cannot defeat summary judgment." (*Id.* at 22).

In opposition, Fred contends that "[a]mple evidence in the record supports Fred's position that he did not sign the guaranty." (ECF No. 121 at 13). Such purported evidence includes: (1) Fred's testimony under oath that he did not sign the guaranty; (2) Fred's expert's testimony that Fred's signature was not authentic; and (3) testimony from the notary and witness to Fred's signature that they do not know whether Fred signed the guaranty. (*Id.* at 13-14).

Despite Plaintiff's arguments to the contrary, the Court does not find that Fred's expert's "testimony is of such a vague and indeterminate nature that it cannot defeat summary judgment." (ECF No. 126 at 17). Rather, Fred's expert opined that "the signature on the questioned guaranty is not a genuine signature of Mr. Daibes." (ECF No. 121-21 at 4). This opinion is also consistent with Fred's testimony that he did not sign the guaranty.

Plaintiff further contends that the following evidence supports the presumption of validity: (1) Fred's notary's testimony about the authenticity of Fred's signature; (2) the amount of times Fred's notary has notarized Fred's signature; and (3) Fred's notary's unwillingness to sign anything that she did not believe contained Fred's signature. Nevertheless, Fred's notary testified during her deposition that she could not say if Fred signed the guaranty or not. (ECF No. 121-5 at 3). The purported witness to the guaranty testified to the same. (ECF No. 121-22 at 4 ("Q. But you don't have any personal knowledge sitting here today whether it was really him who signed it or somebody else? A. I just don't know.")). In fact, Fred's notary and the purported witness to

the guaranty notarized and signed the guaranty out of Fred's presence, without knowledge of whether Fred signed the guaranty. Combined with the evidence discussed above, the Court finds that Fred has overcome the presumption of validity and that a genuine issue of material fact exists as to whether Fred signed the guaranty. *See Keville v. McKeever*, 675 N.E.2d 417, 430 (Mass. App. Ct. 1997) ("[W]e agree with the guardian that [the presumption of validity] was rebutted by (a) the notary's admission that she notarized a signature on a document . . . that was not signed in her presence; (b) Marian's admission that the Harvard Avenue deed was signed out of the notary's presence, and (c) McCann's expert opinion that it was Marian who signed Joseph's name to the deed."). Accordingly, Plaintiff's motion for summary judgment with respect to count five as to Fred is denied.

### 4. Estoppel (Count Eight)

Plaintiff argues that the Court should grant summary judgment as to count eight because Fred is estopped from disclaiming responsibility for the debt he owes to Plaintiff. "Equitable estoppel 'is designed to ensure that the loss is borne by the party who "made the injury possible or could have prevented it."'" *Mortg. Elec. Registration Sys., Inc. v. Omar*, No. A-5187-06T3, 2008 WL 2050834, at *6 (N.J. Super. Ct. App. Div. May 15, 2008) (citations omitted). "Equitable estoppel does not require evidence of fraudulent intent; the doctrine applies if the conduct 'works an unjust or inequitable result to the person it was designed to influence.'" *Id.* (citations omitted). "[A]s between two innocent parties[,] equity will visit the loss upon the one by whose act the injury first could have been avoided." *Id.* (alterations in original) (citations omitted).

Here, Plaintiff assumes for the purposes of its argument that Fred is an innocent party, and contends that Fred should be responsible for the debt owed to Plaintiff because Fred "was in the best position to prevent the submission to [Plaintiff] of the allegedly forged Fred Guaranty." (ECF

18

No. 111-1 at 26). In support of Plaintiff's contention, Plaintiff points to the following allegations: (1) Fred testified that he did not always sign documents in front of a notary; (2) Plaintiff had no reason to question the signed, witnessed, and notarized guaranty; and (3) Fred haphazardly handled notarizations in his office. (*Id.* at 25-27). Because the actual harm suffered by Plaintiff resulted from Daibes's failure to pay Plaintiff's invoices, Plaintiff's argument necessarily implies that, without submission of Fred's purported guaranty, such default could have been prevented.

In opposition to Plaintiff's argument, Fred maintains that it was Plaintiff that made Daibes's default possible, or could have prevented such default by Daibes. (ECF No. 121 at 19). In support of Fred's contention, Fred avers that Plaintiff "consistently allowed Daibes . . . to run balances that were significantly higher than the company's credit limits." (*Id.*). Moreover, Fred alleges that "Daibes['s] . . . credit limit began at $250,000, ultimately increasing to $2 million. Nonetheless, [Plaintiff] permitted Daibes . . . to run balances far exceeding these limits, at times exceeding $5 million." (*Id.*). Finally, Fred purports that Plaintiff "possessed a mechanism to lock purchasers out of the system and prevent them from lifting, but it neglected to lock Daibes . . . out until January 2014, after the balance had increased to approximately $5.8 million." (*Id.*).

Based on the foregoing, the Court finds that a genuine issue of material fact exists as to which party's actions or inactions could have first prevented Daibes's default. *See Farmers Nat'l Bank & Tr. Co. of Reading v. Flexible Truck Corp.*, 81 F.2d 541, 541 (3d Cir. 1936) ("If we apply the principle that where one of two innocent parties must suffer through the wrongdoing of a third, the loss must be borne by that party whose act or omission made possible the wrong, then it becomes a question for the jury whether the omission of the appellee . . . was not the dominant factor in making the loss possible.").

Furthermore, it appears that Plaintiff also argues that summary judgment is proper under

19

the more modern approach to equitable estoppel claims. Pursuant to the more modern approach, "[t]he essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." *O'Malley v. Dep't of Energy*, 537 A.2d 647, 651 (N.J. 1987). Nonetheless, because Fred has demonstrated a genuine issue of material fact as to whether Fred signed the guaranty, Plaintiff is unable to establish a knowing and intentional misrepresentation at this stage of the litigation. *See supra* Part IV.B.3.b. Accordingly, summary judgment with respect to count eight as to Fred is denied.

## V. CONCLUSION

For the reasons stated above, the Spector Defendants' motion for summary judgment is denied. Further, Plaintiff's motion for summary judgment is granted in part and denied in part. An appropriate Order accompanies this Opinion.

Dated: March 16, 2018

CLAIRE C. CECCHI, U.S.D.J.