

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: 973-639-6285
llustberg@gibbonslaw.com

November 7, 2023

**VIA CM/ECF**

Honorable Claire C. Cecchi
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

   **Re:** *New England Petroleum Limited Partnership v. Daibes Oil, LLC, et al.* **No. 2:14-cv-00726 (CCC) (JBC)**

Dear Judge Cecchi:

  As Your Honor is aware, this firm represents Fred Daibes in the above-referenced matter. Please accept this letter, in accordance with the briefing schedule set by the Court, in response to Plaintiff's November 3, 2023 supplemental submission [ECF No. 237] and in further support of Mr. Daibes's supplemental submission filed on the same date [ECF No. 238].

  **1. The Law of the Case Doctrine Does Not Apply to Mr. Daibes's Pending Motion *in Limine*.**

  As addressed more fully in Mr. Daibes's November 3, 2023 letter brief [ECF No. 238 at 1-2], the law of the case doctrine does not bar Mr. Daibes's motion *in limine* to limit his liability on Plaintiff's breach of guaranty claim because the issue was not presented to or decided by this Court prior to the presently pending motions. *See United States ex rel Silver v. Omnicare, Inc.*, No. 11-1326, 2020 WL 7022664, at *3 (D.N.J. Nov. 20, 2020) (law of the case doctrine "does not apply if a court did not previously address the subject issue.") (internal quotation marks and citations omitted). Indeed, Plaintiff concedes that the cap issue was not before the Court on its motion for summary judgment, and submits instead that the issue was somehow "implicitly" decided by the Court, when it concluded, with respect to a different defendant, Munir Daibes, that the guaranty was unambiguous. ECF No. 237 at 3. This argument should be rejected for three reasons.

  *First*, as was explained in Mr. Daibes's prior submission, whether or not the guaranty is ambiguous does not alone resolve the limitation of liability issue; to the contrary, courts have refused to enforce unambiguous language where the consequence of doing so would be an unjust result. *See* ECF No. 238 at 2-4 (collecting cases). Indeed, well-developed New Jersey law prohibits enforcement of even plain contract terms that "are manifestly unfair or oppressive." *Howard v. Diolosa*, 241 N.J. Super. 222, 230 (App. Div. 1990). Thus, courts have refused to

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 2

enforce clear but unjust terms that are unfair, unconscionable, or violate public policy.[1]  *See* ECF No. 238 at 3 (citing *Woodson v. Runyon*, 537 F. App'x 28, 29 (3d Cir. 2013); *Vasquez v. Glassboro Service Ass'n Inc.*, 83 N.J. 86, 99 (N.J. 1980); *Saxon Const. & Mgmt. Corp. v. Masterclean of N. Carolina, Inc.*, 273 N.J. Super 231, 236 (App. Div. 1994)).

*Second*, the underlying principles regarding the interpretation of guarantees support Mr. Daibes's position that even seemingly broad language should not be strained beyond any reasonable understanding of the parties, an argument that was not before the Court when it previously decided the motion for summary judgment as to Munir Daibes.  *See* ECF No. 120 at 14-15 ( Daibes Oil's Opposition to Summary Judgment); ECF No. 121 at 17-21 (Fred Daibes's Opposition to Summary Judgment); ECF No. 153 at 15-18 (Summary Judgment Opinion).  For example, in *TIAA Commercial Finance, Inc. v. Galusha*, the court rejected the plaintiff's attempt to rely on "broad language" in a guaranty to extend to obligations that were not reasonably contemplated by the parties.  No. 19-14809, 2020 WL 7022636, at *7 (D.N.J. Nov. 30, 2020). That, as Plaintiff points out and as defense counsel concedes, *TIAA* involved a separate instrument does not diminish its applicability.  There, the guaranty in issued covered "all present and/or future obligations" owed by the guarantor to the plaintiff.  *Id.*  However, despite that broad language, the court concluded that an obligation owed by the guarantor by virtue of its acquisition of a third company was *not* covered by the unlimited language of the guaranty because the guaranty was not reasonably intended to extend to debts not entered into between the parties.  *Id.*  Here, the guaranty also covers "any and all other indebtedness or obligations" owing from Daibes Oil to Plaintiff [ECF No. 212-2 at ¶ 3], but that broad language must be read in light of the intention of the parties.  *See TIAA Com. Fin.*, 2020 WL 7022636 at *7; *see also Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 355 N.J. Super 390, 405 (App. Div. 2002) ("an agreement guaranteeing the particular debt of another does not extend to any other indebtedness not within the intention of the parties"); *Garfield Tr. Co. v. Teichman*, 24 N.J. Super 519, 527 (App. Div. 1953) (same); *MLMT 2005-CIP1 Parsippany Prop., LLC v. Waterford of Parsippany Prop., LLC*, No. A-4210-14T2, 2016 WL 7148397, at *4 (App. Div. Dec. 7, 2016) (noting that the "rules governing the construction of contracts apply" to guarantees, and that "[c]ourts are generally obligated to enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.").  Because the extent of Daibes Oil's reasonably foreseeable debt at the time of the signing of the guaranty at issue here was capped at $1,000,000 [ECF No. 182, Section 7B(1)(a) ¶16], "there is no reason to believe the parties intended to extend the obligations of guarantee beyond [that amount]."  *See TIAA Com. Fin.*, 2020 WL 7022636 at *7 (cleaned up).  Put another way, though the context may be different, the rule of law is the same. And at the very least, that law means that the Court should allow the question of the intent of the

---

[1] Plaintiff's citation to a single case applying Pennsylvania law for the proposition that a court cannot rewrite contract terms does not address these principles of fairness and public policy under New Jersey law.  *See* ECF No. 237 at 3 (citing *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 246-47 (3d Cir. 2008)).

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 3

parties—the essence of any contract claim—to be decided by the jury, contrary to Plaintiff's *in limine* motion which seeks to bar Mr. Daibes from raising this claim at all. *See* ECF 211-1 ("NEPL Br.") at 14-17 (arguing that Mr. Daibes should be precluded from testifying as to the limits on the Guaranty); ECF No. 216 ("NEPL Reply") at 6-7 (arguing that Mr. Daibes cannot submit evidence of the parties' intent given his position that he did not sign the Guaranty); ECF No. 215 ("Daibes's Opp. Br.") at 19-25 (explaining that guarantees should be ascertained by giving effect to the objective intentions of the parties); Transcript of Oral Argument ("Tr.") at 21:1-22:4, *New England Petroleum Ltd. P'ship v. Daibes Oil, LLC*, et al. No. 2:14-cv-00726-CCC (Nov. 1, 2023) (discussing Mr. Daibes's right to raise alternative arguments).

*Third*, and beyond the fact that any prior ruling as to the ambiguity of the contract did not address and does not resolve the limitation of liability issue, the law of the case doctrine should not, in any event, be applied here. Specifically, the Court should decline to apply the doctrine in a manner that would undermine Mr. Daibes's opportunity to be fully and fairly heard, as the cap issue was not raised by any party on summary judgment, and was certainly not raised by him, ECF Nos. 120, 121. *See Silver*, 2020 WL 7022664 at *3 ("The doctrine of the law of the case, however, does not apply if a court did not previously address the subject issue."); *Slater v. Marshall*, 906 F. Supp. 256, 259 (E.D. Pa. 1995) (law of the case doctrine did not preclude defendant's motion to dismiss, even though the court had previously found the complaint stated a claim when ruling on the co-defendant's prior motion to dismiss, because the issues raised by the two defendants were different); *see also Speeney v. Rutgers, The State Univ.*, 369 F. App'x 357, 360 (3d Cir. 2010) (noting that "[t]he law of the case doctrine only precludes relitigation of issues that the parties had a full and fair opportunity to litigate."); *Advanced Drainage Sys., Inc. v. Siteco Materials, Inc.*, No. 13-1349, 2017 WL 379426, at *2 (D.N.J. Jan. 25, 2017) (adopting report and recommendation declining to apply the law of the case doctrine because "it would be unjust to bind [Defendant] to that finding as [Defendant] was not a party to the motion to dismiss and did not have a full and fair opportunity to litigate the issue.") (alterations in original).

   **2. Plaintiff Should Be Precluded From Introducing Evidence Regarding Guarantees Purportedly Executed By Mr. Daibes in Other Matters.**

For the reasons set forth in Mr. Daibes's prior briefing [ECF Nos. 212-1, 217], which has been carefully reviewed by the Court, Plaintiff should be precluded from introducing evidence concerning other guarantees purportedly signed by Mr. Daibes in other matters because such evidence is irrelevant under Rule 401 and, even if such evidence was relevant, it would be excluded under Rule 403. The unrelated guarantees are inadmissible under Rule 401 because there is nothing about them that is "of consequence in determining th[is] action" or would "tend to prove the matter" at issue here; *i.e.*, whether Mr. Daibes signed the 2009 Guaranty. Fed. R. Evid. 401(b); *Lopez v. Mulligan*, No. 12-4976, 2018 WL 297582, at *2 (D.N.J. Jan. 3, 2018). Indeed, Plaintiff concedes that evidence of unrelated guarantees is not probative of the ultimate issue. ECF No. 237 at 5 n.4 ("That Fred has signed other guarantees does not make it any more or less likely that his signature might have been forged on any particular guaranty."). Further, even if the evidence

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 4

was admissible under Rule 401, which it is not, it would be excluded because the probative value, if any, of such information is vastly outweighed by the real danger of unfair prejudice, confusion of the issues, and waste of time.[2] Fed. R. Evid. 403. Specifically, admitting unrelated civil guaranties would result in a mini-trial about the circumstances of each of those guaranties, evidence that would confuse the issues and waste judicial resources, all with regard to facts that, on their face, have no bearing on whether Mr. Daibes signed the guaranty at issue here. *See United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (court did not abuse discretion in limiting cross-examination given the "marginal relevance and the risk of delay and confusion created by a mini-trial to explain the evidence" sought to be introduced); *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006) ("potential for an unnecessary mini-trial on the issue indicated that the evidence should be excluded under Rule 403"). As explained below, Plaintiff's arguments to the contrary are unavailing, largely because they misread the record.

*First*, by misconstruing Mr. Daibes's deposition testimony, Plaintiff argues that evidence of the guaranty executed in favor of Petroleum Traders Corp. (the "Petroleum Traders Guaranty")– a purported unlimited guaranty–is admissible to "undermine[] any testimony Fred might give that his signature on the Guaranty in this case must have been forged because he would not have signed an unlimited Guaranty."[3] ECF No. 237 at 4. This argument fails because: (1) Mr. Daibes did not, in fact, testify that he has never signed an unlimited guaranty; and (2) if Mr. Daibes were to so testify at trial, Plaintiff would then have the opportunity to cross-examine him, as Mr. Daibes has conceded. Plaintiff cites to the portion of Mr. Daibes's testimony where he stated that an "[u]nlimited guaranty would definitely concern me." ECF No 214-1, Ex. D. at 163:14-22. But Mr. Daibes's specifically corrected himself halfway through his testimony: "I've never signed an unlimited – I don't know what is an unlimited guarantee." *Id.* Thus, the language quoted in Plaintiff's papers does not support its position; Mr. Daibes testified that he does know what an unlimited guaranty is – he did not state that he has never signed one. *Id.* But, in any event and as was explained at oral argument, if Mr. Daibes were to testify that he never signed an unlimited guaranty, then Plaintiff would be permitted to cross examine Mr. Daibes and impeach his

---

[2] If the Court chooses to admit evidence of the unrelated guaranties over Mr. Daibes's objection, it must provide a statement of reasons on the record which demonstrates that it appropriately weighed the probative value of the evidence against the prejudice that would result from its admission. *United States v. Bailey*, 840 F.3d 99, 121 (3d Cir. 2016)("We have stated numerous times that a district court must provide a statement of reasons, on-the-record, explaining why it is admitting evidence over a Rule 403 objection.").

[3] Relatedly, at argument, Plaintiff argued the fact that Mr. Daibes has "disavow[ed] his signature "on more than one occasion," which is a "common theme" between the guaranty at issue here and the Petroleum Traders Guaranty. Tr. 57:15-25. In its supplemental briefing, however, Plaintiff conceded that Mr. Daibes did not "disavow" the Petroleum Traders Guaranty [ECF No. 237 at 4 n.3].

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 5

credibility.  Tr. at 38:24-39:4 ("If [Mr. Daibes] were to testify at trial that he never ever signed an unlimited guaranty, then [Plaintiff] could absolutely cross-examine him with evidence that he did if they have, period.  And we concede to that in our papers.  I think this issue – as Mr. Morgan said, I think this issue is resolved.").  Thus, unless Mr. Daibes testifies that he never signed an unlimited guaranty, Plaintiff's attempt to introduce evidence of the Petroleum Traders Guaranty is premature.

*Second*, Plaintiff submits that the Petroleum Traders Guaranty is admissible because it is probative of whether Mr. Daibes has an interest in Daibes Oil, which is purportedly relevant to Plaintiff's unjust enrichment claim.  ECF No. 237 at 5.  Specifically, Plaintiff submits that the jury could infer that Mr. Daibes would not guaranty payment by Daibes Oil of millions of dollars "unless he derived some financial benefit from the company."  *Id.*  But Plaintiff has not produced any basis–not one shred of evidence, expert or otherwise–for the proposition that it seeks to establish or the inference it seeks to draw.  Specifically, Plaintiff has not submitted expert or other testimony to support its conclusory argument that "[a] juror could reasonably infer that [Mr. Daibes] would not guaranty payment by Daibes Oil of potentially millions of dollars unless he derived some financial benefit from the company."  ECF No. 237 at 5; *see also* Tr. 61:18-62:3 (plaintiff's counsel submitted that it is "common" for an individual to sign a guaranty supporting a business in which he or she has a financial interest).  To the contrary, guarantees, by their nature, come from third parties, who may or may not have a financial interest in the entity at issue.  Nor can the proposition that Plaintiff seeks to establish derive sufficient support for admissibility by citation to single case—here, *TIAA*, to which Plaintiff points because, there, the principals of the guarantor signed the guarantees in issue supporting the business.  Tr. 61:19-23.  But one case does not a support the general proposition that Plaintiff invokes in an effort to shoehorn into this case about a single guaranty evidence of an entirely separate guaranty, signed under different circumstances which would then have to be explored at trial, as would, potentially, all of the other guarantees that Mr. Daibes has signed, to determine how many of which were for entities in which he had an interest.  Indeed, the inference that Plaintiff seeks is particularly unreasonable in this case because, as the Court perceptively noted at the hearing, Munir Daibes–who owns Daibes Oil–is Mr. Daibes's relative, thus providing a completely reasonable alternative explanation for the Petroleum Traders Guaranty.  Tr. 55:16-18.

*Third*, Plaintiff submits that a guaranty executed in favor of Braen Supply Company (the "Braen Supply Guaranty") is admissible because Mr. Daibes testified that he was not sure if he signed the Braen Supply Guaranty and because Mr. Daibes testified "that he has *never* authorized anyone to sign something on his behalf"; thus, according to Plaintiff, it "should be permitted to introduce the Braen Guaranty and inquire of Fred why it is that he does not know if he signed it."  ECF No. 237 at 5-6.  Crucially, however, Mr. Daibes did not testify that he has never authorized anyone to sign his name; instead, Mr. Daibes denied that anyone is authorized to sign his name *without his permission*.  ECF No 214-1, Ex D. at 199:16-19 ("Q.  I want to ask you, is anybody authorized to sign your name for you without your permission?  A.  No.").  In other words, the issue here is whether the 2009 Guaranty was forged–which Mr. Daibes will prove at trial that it

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 6

was–not whether in other instances other individuals signed Mr. Daibes's name with his express approval. Nor, as Plaintiff argues, did Mr. Daibes contend that he did not sign his name on the Braen Supply Guaranty, let alone that it was forged, as Plaintiff continues to assert. ECF No. 237 at 5-6 ("Fred has testified that he has *never* authorized anyone to sign something on his behalf . . . [t]hat leaves only a few possibilities for why the Braen Supply Guaranty bears a signature Fred does not recognize as his," including that it was forged). Nor does he disavow it, as Plaintiff contends Tr. 50:17-51-2 (arguing that a statement that one cannot remember signing a document is tantamount to "disavowing" that signature). Instead, in his deposition, when asked "Is that your signature on the guarantee?" Mr. Daibes said "I don't know." ECF No 214-1, Ex. D. at 197:9-11. Now, Plaintiff seeks to inquire into *why* Mr. Daibes does not recognize his signature, ECF No. 237 at 6, a truly nonsensical line of inquiry for which there is no good faith basis, and one that would certainly require a mini-trial into whether his inability to recognize that signature was reasonable, including, potentially, entirely new expert testimony. And none of the signatures that Mr. Daibes does not recognize, such as that on the Braen Supply Guaranty, ECF No 214-1, Ex D. at 196:18-197:14, is relevant simply because here, Mr. Daibes submits that the signature on this 2009 Guaranty is not his. In any event, the mini-trial that Plaintiff seeks would, at the end of the day, address the circumstances of a Guaranty on behalf of an unrelated third party (Braen Supply), which is not at all probative of whether Mr. Daibes signed the guaranty at issue here.

For the foregoing reasons, evidence regarding guarantees purportedly executed by Mr. Daibes in other matters is not probative of whether Mr. Daibes signed the 2009 Guaranty; as such, the evidence is inadmissible under Rule 401(b). And, even if such evidence was relevant, it would nevertheless be excluded under Rule 403 because its admission will confuse the issues for the jury and waste time and judicial resources. *See Jimenez*, 513 F.3d at 76; *Williams*, 646 F.3d at 448. Therefore, Plaintiff should be precluded from admitting evidence of the unrelated guarantees at trial.[4]

### 3. Plaintiff's Arguments in Support of Precluding or Limiting the Testimony of Mr. Daibes's Handwriting Expert Should be Rejected.

As addressed in Mr. Daibes's November 3, 2023 letter brief, during his deposition, Mr. Daibes's handwriting expert, Gregory McNally, was examined comprehensively on the standards he applied and the process he used in conducting his review of the signature on the 2009 Guaranty

---

[4] Because "[i]rrelevant evidence is not admissible," Fed. R. Evid. 402, Plaintiff's assertion that a limiting instruction would cure the problem posed by this evidence misses the point; a limiting instruction is only appropriate if the evidence is admissible in the first place, *see*, *e.g.*, *United States v. Arellano*, No. 17-CR-0051, 2018 WL 4616113, at *2 (D.N.J. Sept. 26, 2018) (noting that the Court would apply a limiting instruction only after determining that the evidence was "not subject to exclusion under Rule 403"), and, for the reasons explained above, the evidence of other civil guarantees is not.

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 7

as it relates to known samples of Mr. Daibes's signature. *See* ECF No. 238 at 4-7. In its supplemental briefing, as it did in its reply brief in further support of its *Daubert* motion, Plaintiff again argues that "reliance on deposition testimony to bolster an otherwise deficient report under Rule 26(a)(2) is improper." ECF No. 237 at 6-7 (citing *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 640-41 (7th Cir. 2008) and Fed. R. Civ. P. 26, *advisory committee note*). However, as explained by counsel during oral argument, Tr. 71:5-20, and in Mr. Daibes' supplemental letter brief, ECF No. 238 at 6, n.5, the authority Plaintiff cites in support of this position is inapposite and has been rejected by this Court and the Third Circuit.

Plaintiff's reliance on *Ciomber* is inapposite. In *Ciomber,* 527 F.3d at 640-41, the Seventh Circuit reviewed a much different challenge to an expert report: whether the district court abused its discretion in excluding an expert, who filed an untimely and incomplete report. There, the proponent of the expert claimed that the expert was "unable to disclose a completed report because he was hospitalized," requested a week to disclose an amended report, which was granted, and then failed to disclose a supplemental report. *Id.* at 638-39. Aside from being factually distinguishable, in June, in *Mills v. Ethicon, Inc.,* -- F. Supp. 3d --, No. 17-12624, 2023 WL 4118433, at *14, n 7 (D.N.J. June 22, 2023), Judge McNulty rejected the defendant's argument that an expert report cannot be backfilled at deposition on the grounds that "[t]he U.S. Court of Appeals for the Third Circuit . . . does not automatically bar consideration of such evidence." *Id.* (citing *Pritchard v. Dow Agro Scis.,* 263 F.R.D. 277, 282 & n.4 (W.D. Pa. 2009); *ZF Meritor, LLC v. Eaton Corp.,* 696 F.3d 254, 297 (3d Cir. 2012)). As noted in Mr. Daibes's supplemental letter brief, the Third Circuit has made clear that "exclusion of critical expert evidence is an 'extreme' sanction" and that prior to preclusion, the court must consider factors such as the "prejudice or surprise" occasioned by the party opposing the expert at issue. ECF No. 238 at 6, n.5 (citing *Mills,* 2023 WL 4118433, at *14, n 7; *Eaton Corp.,* 696 F.3d at 297).

Similarly, Plaintiff's reliance on the Advisory Committee Note to Fed. R. Civ. P. 26 to support its argument that deposition testimony cannot be used to cure a deficient expert report is also misplaced. *See* ECF No. 237 at 6-7 ("*see also* Fed. R. Civ. P. 26, *advisory committee note* (explaining that expert must provide "detailed and complete report[,]" not one that is 'sketchy and vague[,]' and that the report must 'set forth the substance of the direct examination.'")). Indeed, the portion selected by Plaintiff provides:

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony . . . must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness.

Gibbons P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 8

Here, Mr. McNally's report states the testimony he is "expected to present during direct examination, together with [his] reasons therefor" – *i.e.*, that the 2009 Guaranty "is not an authentic signature of the writer of the known signatures attributed to Fred Daibes" because "[t]he questioned signature is a closed loop which forms an acute angle on its left side [and] the known signatures normally have an obvious slash, like a number (1), on the bottom of the signature towards the left side [while] [t]here are two mostly obscure slashes on the bottom of the questioned signature not as noticeable as those on the known signatures." *See* McNally Report at 3.[5] Plaintiff entirely misquotes the Advisory Committee Note's reference to "sketchy and vague" substance, which expressly relates to interrogatory responses under the former rule.

Plaintiff's next argument, that Mr. McNally's deposition testimony "does not cure the striking deficiencies in the report," should be rejected for the reasons set forth in Mr. Daibes's supplemental letter brief. *See* ECF No. 238 at 5-7. Plaintiff's cherry-picked testimony does not negate the fact that Mr. McNally clearly testified that in issuing his report he followed the ASTM standards, which mirror the SWGDOC standards.

> Q. [referencing McNally-4, the SWGDOC Standards for Examination of Handwritten Items] . . .am I correct that you did not follow the procedures listed in this document?
> A. No. I – basically, I did – I have followed the procedures in this document. This is basically similar to the ASTM's standards, except some of the government workers didn't want to work along with ASTM anymore.
> . . .
> Q. Did you follow the ASTM standards in –
> A. Yes.
> Q. – your examination?
> A. Yes. I did.
> Q. And you followed the ASTM standards in issuing your report?
> A. Yes.

McNally Dep. Tr. at 67:12-68:22. And courts have repeatedly held that these document examination protocols are reliable. *See, e.g., United States v. Foust,* 989 F.3d 842, 846-47 (10th Cir. 2021); *United States v. Yagman,* No. 06-227, 2007 WL 4409618, at *3 (C.D. Cal. May 22, 2007); *United States v. Prime,* 431 F.3d 1147, 1154 (9th Cir. 2005); *United States v. Gricco,* No. 01-90, 2002 WL 746037, at *6 (E.D. Pa. Apr. 26, 2002). Despite Plaintiff's assertion, Mr. McNally's testimony that he does not need to expressly refer to the written documents setting forth

---

[5] Mr. McNally also concludes that "the '9's on the questioned Guaranty was written over and was not originally the number '9'" because "[t]he typestyle used to execute the questioned Guaranty is New Times Roman" and "[t]he number '9' found in this typestyle does not agree with the '9's found on th[e 2009] Guaranty." *Id.*

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 9

the standards because he already knows what they are does not somehow make it the case that he did not follow those standards. As is clear from Mr. Daibes's supplemental letter brief, Mr. McNally's explanation of his process for evaluating the "variations" between the exemplar signatures and that on the 2009 Guaranty echoes the accepted forensic document examination standards. *See, e.g.,* ECF No. 238 at 6 (*comparing* McNally Dep. Tr. 105:19-106:13 *and* McNally Ex. 4 (SWGDOC Standard for Examination of Handwritten Items) at Section 3.3.15). At worst, this is a matter for cross-examination at trial.

Finally, Mr. McNally should be permitted to testify that the signature on the 2009 Guaranty at issue here is not an authentic signature of Mr. Daibes based on his observation of differences between that signature and Mr. Daibes's signature on dozens of other exemplars. Indeed, in the decades since the decisions cited by Plaintiff in support of its argument that Mr. McNally should be precluded from testifying as to whether the signature on the 2009 Guaranty is "genuine or not," courts have specifically found expert handwriting analysis to be reliable and have permitted experts to testify as to that issue, ultimate or not. *See, e.g., United States v. Rutland,* 372 F.3d 543, 545 (3d Cir. 2004) (citing Fed. R. Evid. 704(a)) (recognizing that "[a] handwriting expert may testify to the ultimate issue in a case."); *Foust,* 989 F.3d at 844 (affirming admission of ultimate opinion handwriting testimony where the expert used the ASTM standards); *Prime,* 431 F.3d at 1154 (permitting ultimate opinion testimony by expert applying the ASTM standards that the defendant authored the notes in question); *United States v. Crisp,* 324 F.3d 261, 269-70 (4th Cir. 2003) (allowing ultimate opinion that defendant authored the note); *United States v. Mooney,* 315 F.3d 54, 63 (1st Cir. 2002) (same).

More specifically, in *United States v. Van Wyk,* 83 F. Supp. 2d 515, 523 (D.N.J. 2000) (cited by Plaintiff at ECF No. 237 at 9),[6] the Court was not "satisfied that the jury would benefit from [the expert's] testimony" on the ultimate issue because, at that time, "[t]he reliability of text analysis [at issue in that case], much like handwriting analysis, [was] questionable because . . . there is no known rate of error, no recognized standard, no meaningful peer review, and no system of accrediting an individual as an expert in the field." As provided in Mr. Daibes's opposition to Plaintiff's *Daubert* motion, that is simply not the case with regard to handwriting analysis. *See, e.g.,* ECF No. 215 at 8-10 (establishing that the standards and procedures used by Mr. McNally here "form a testable hypothesis," "have been subjected to peer review and empirical study," were "established and promulgated by representatives from federal, state, and local law enforcement, private attorneys, and academicians, and underwent several rounds of review and comment from the forensic document community," and have "been applied outside of the legal context, including by the Smithsonian.").

---

[6] Notably, this decision and all others cited in Plaintiff's reply brief in further support of its *Daubert* motion came down prior to or around the time *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) was decided.

GIBBONS P.C.

Honorable Claire C. Cecchi
November 7, 2023
Page 10

      For these reasons, and those addressed more fully in Mr. Daibes's November 3, 2023 letter brief [ECF No. 238], the Court should, as many courts have, permit McNally to testify on behalf of Mr. Daibes at trial and allow the jury to weigh that testimony, including any cross-examination that Plaintiff may wish to conduct, in connection with its ultimate adjudication of this matter.

      Thank you for your consideration of this matter.

Respectfully submitted,

Lawrence S. Lustberg